CONSUMER LAW OFFICE OF WILLIAM E. KENNEDY
WILLIAM E. KENNEDY (CSB #158214)
(wkennedy@kennedyconsumerlaw.com)
2797 Park Avenue, Suite 201
Santa Clara, CA  95050
(408) 241-1000- TEL
(408) 241-1500- FAX

LAW OFFICE OF TYLER S. HINZ
TYLER S. HINZ (CSB #280612)
(Tyler.Consumer@gmail.com)
2797 Park Ave, Suite 201
Santa Clara CA, 95050
(408)218-6665- TEL
(408)677-5791- FAX

Attorneys for Plaintiff ALAZAR MICHAEL

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAZAR MICHAEL, an individual<br><br>              Plaintiff,<br>    vs.<br><br>NEW CENTURY FINANCIAL SERVICES, a New Jersey corporation, and PRESSLER AND PRESSLER LLP, a New Jersey limited liability partnership.<br>            Defendants. | Case No.: 5:13-CV-03892-LHK-HRL<br><br>**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Date: April 10, 2014<br>Time: 1:30 p.m.<br>Courtroom: 8<br><br>The Honorable Lucy H. Koh |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iv

I. INTRODUCTION ...........................................................................................................1

II. FACTUAL ALLEGATIONS.........................................................................................1

III. ARGUMENT .................................................................................................................3

    A. This Court has Specific Jurisdiction Over Both Defendants and General Jurisdiction Over Defendant New Century Financial Services .............................................................3

       1. This Court has Specific Jurisdiction To Hear this Matter Since the Defendants Directed their Actions at California and Michael was Injured in California .................3

          a. Defendants Purposefully Directed their Collection Activities at California by Obtaining Levies on Bank Accounts They Knew Were Located in California. .4

              i. Defendants Fulfill the First Prong of the Effects Test when they Intentionally Placed the Levy ...................................................................6

              ii. The Second and Third Prongs of the Effects Test are Satisfied Since Defendants Expressly Aimed their Collection Activities at Mr. Michael Whom they Knew Lived in California.................................................6

          b. The Claims of the FAC Arise out of Defendants' Forum Related Actions when They Placed Levies on Mr. Michael's Bank Accounts Without First Domesticating the Judgment ...............................................................................8

          c. Exercising Personal Jurisdiction In this Case Is Reasonable Since the Burden Placed on the Defendant in Adjudicating this Case in California is Minimal and California has a Strong Interest in Protecting Residents that have been Tortiously Injured. ...................................................................................9

       2. The Court Has General Jurisdiction Over New Century Financial Services ...........13

    B. The Rooker Feldman Doctrine Does Not Bar Plaintiff's Claims........................................13

    C. Levying Funds in Ohio Violates Due Process and the Fair Debt Collection Practices Act.15

D. The Situs of the Funds Levied was California and Therefore Levy in Ohio was Improper 20

E. Plaintiff's FDCPA and UCL Claims Are Not Defeated by *Yu v. Signet* ..............................23

F. Plaintiff Should be Allowed to Amend if the Motion to Dismiss is Granted......................24

IV. CONCLUSION ........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

*Bryant v. Gordon & Wong Law Group, P.C.*, 681 F.Supp.2d 1205 (E.D. Cal. 2010)................. 14, 15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .............................................................. 10, 19

*Calder v. Jones*, 465 U.S. 783 (1984) ............................................................................................. 5, 6

*Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126 (9th Cir. 1995) .................................... 4

*Caskie v. Webster*, 2 Wall. Jr. 131, Fed. Cas. No. 2,500 .................................................................. 21

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482 (9th Cir. 1993)................................................. 12

*Corporate Inv. Business Brokers v. Melcher*, 824 F.2d 786 (9th Cir. 1987) .................................... 10

*Data Disc, Inc. v. Systems Tech Assocs.*, Inc. 557 F.2d 1280 (9th Cir.1977) ............................... 4, 13

*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. 2002)........................................................ 7, 11

*Engelen v. Erin Capital Management*, 2011 WL 3844587 (S.D.Cal.2011) ...................................... 14

*Fleming v. Gordon & Wong Law Group, P.C.*, 723 F.Supp.2d 1219 (N.D. Cal. 2010)..................... 15

*Gilmore v. Account Management, Inc.*, 2009 WL 2848278 (N.D.Ga., 2009........................................ 8

*Hanson v. Denckla*, 357 U.S. 235 (1958) ....................................................................................... 24

*Harris v. Balk*, 198 U.S. 215 (1905) .............................................................................................. 21

*Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250 (9th Cir. 2008) ................................................ 11

*International Shoe Co. v.Washington*, 326 U.S. 310 (1945) ...................................................... 16, 22

*Keeton v. Hustler Magazine*, Inc., 465 U.S. 770 (1984) .................................................................... 7

*Kenmen Engineering v. City of Union*, 314 F.3d 468 (10th Cir. 2002) ............................................ 14

*Kougasian v. TMSL Inc.*, 359 F.3d 1136 (9th Cir.2004)................................................................. 14

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir.2000) ............................................................................... 24

*Menken v. Emm*, 503 F.3d 1050 (9th Cir. 2007). ....................................................................... 8, 12

*Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062 (9th Cir. 1990) ............................................... 4

*Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) .............................................. 8

*New v. Gemini Capital Group*, 859 F.Supp.2d 990 (S.D.Iowa 2012) .............................. 19

*Office Depot Inc. v. Zuccarini*, 596 F.3d 696 (9th Cir. 2010)................................ 17, 20

*Paccar Int'l v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058 (9th Cir.1985) .......................... 10

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006)........................................ 4

*Pelaez v. MCT Group, Inc.,* 2011 WL 500215 (D.Nev.2011) ................................ 8, 9, 11, 16

*Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991).................................................... 10

*Rupert v. Bond*, 2013 WL 5272462 (N.D. Cal. 2013). ...................................... 8, 24

*Rush v. Savchuk*, 444 U.S. 320 (1980) .................................................... 16, 22

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir.2004)................................. 3, 4, 9

*Shaffer v. Heitner*, 433 U.S. 186 (1977) ................................ 16, 17, 21, 22

*Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191 (9th Cir. 1988) ................................ 10, 12

*Vacation Village, Inc. v. Clark County,* 497 F.3d 902 (9th Cir.2007) .................................... 14

*Williams v. Cavalry Portfolio Services, LLC*, 2010 WL 2889656 (C.D.Cal. 2010) .......................... 15

*World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286 (1980) ........................................ 21

*Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 2006) ................................. 5, 6

*Zherebko v. Reutskyy*, 2013 WL 4407485 (N.D. Cal. 2013) ................................................ 11

*Ziegler v. Indian River County*, 64 F.3d 470 (9th Cir. 1995)................................................... 11

**Federal Statutes**

15 U.S.C. § 1692e ..................................................................................................... 23

15 U.S.C. § 1692f ..................................................................................................... 23

15 U.S.C. § 1692e(10) ............................................................................................... 23

15 U.S.C. § 1692e(5) ................................................................................................. 23

Federal Rules of Civil Procedure Rule 15(a) ................................................. 23

**State Cases**

*Dickstein v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 295 A.2d 943 (N.J.Super.A.D.1996) ....... 24

*Fenton v. Edwards & Johnson* 126 Cal. 43 (1899) .............................................. 21

*Ferguson v. Ferguson*, 634 N.E.2d 506 (Ind.App.1994) ......................................... 20

*Kahn v. Berman*, 198 Cal.App.3d 1499 (1988) ................................................... 19

*Livingston v. Naylor*, 920 A.2d 34 (Md.App. 2007) ....................................... 18, 19, 20

*Polacke v. Superior Court In and For County of Maricopa*, 823 P.2d 84 (Ariz. 1991) .................... 20

*State v. Western Union Financial Services, Inc.*  208 P.3d 218 (Ariz. 2009) ......................... 19, 21, 22

*Waite v. Waite,* 6 Cal.3d 461 (1972) ..................................................... 21, 22

*Weitzel v. Weitzel*, 27 Ariz. 117, 230 P. 1106 (1924) ............................................ 22

*Williamson v. Williamson*, 275 S.E.2d 42 (Ga. 1981) ........................................... 20

*Yu v. Signet Bank/Virginia,* 69 Cal.App.4th 1377 (1999) ......................................... 23

**State Statutes**

California Code of Civil Procedure § 1710.40 .................................................. 15

California Code of Civil Procedure § 703.510 .................................................. 16

**Other Authorities**

Restatement (Second) of Conflict of Laws § 67(b) (1969) ........................................... 29

*The Off–Reservation Garnishment of an On–Reservation Debt and Related Issues in the Cross–Boundary Enforcement of Money Judgments*, 22 Am. Indian L.Rev. 355, 369 (1998) ................... 21

## I.     INTRODUCTION

This action was brought after Defendants twice levied on Mr. Michael's California bank accounts without serving him with the lawsuit, and without domesticating the underlying judgment. The judgment was obtained in New Jersey in 2001 despite the fact that Mr. Michael lived in Eritrea at the time of the supposed service, which was made on a "white male," rather than Plaintiff.

Years later, in 2010 and again in 2013, Defendants levied on Mr. Michael's bank accounts at Bank of America and Chase, both of which he had opened in California.  With respect to the Chase account, Defendants caused a levy to be issued to Chase at its Ohio location.

Defendants' collection methods were unfair and unlawful because 1) they were based on an invalid judgment, 2) the levies violated due process, and 3) the bank accounts which Defendants levied were located in California, and California law requires domestication of foreign judgments prior to collection.

## II.    FACTUAL ALLEGATIONS

On January 16, 2001, New Century Financial Services, through their attorneys Pressler and Pressler, filed a civil action against Mr. Michael in the Superior Court of New Jersey alleging that it had taken assignment of an unpaid financial obligation which had been incurred on June 8, 1998. First Amended Complaint ("FAC") ¶¶ 9-10.

Defendants claim to have served Mr. Michael with a copy of the Summons and Complaint on January 19, 2001 at 160 Rochelle Ave., Rochelle Park NJ, 07662. However, Mr. Michael was never served as he was living in Eritrea at the time of the alleged service, he had been living in Eritrea since 1996. FAC ¶¶ 11-12.

The return of service only lists one physical characteristic of the person served; claiming to have served a "WM" (white male) but Mr. Michael, who is Eritrean, has dark skin and cannot

reasonably be mistaken for a white male. FAC ¶ 13.  Defendants obtained a default judgment against Mr. Michael on February 8, 2001. FAC ¶ 14.

In 2009, Mr. Michael enrolled in a graduate program at the University of Phoenix and moved to Chino Hills, California. He lived there for a month and then returned to Eritrea. While in Chino Hills, Mr. Michael opened a Bank of America account and deposited funds. Mr. Michael used the funds in the account to pay for his University of Phoenix courses.  FAC ¶¶ 15-16. In 2010, while in Eritrea, Mr. Michael attempted to pay for his University of Phoenix courses with funds from his account. It was at this time that he learned that Defendants had a levy on his Bank of America account and they removed approximately $2,900.00 leaving him with nothing. FAC ¶ 17. As a result, Mr. Michael was unable to pay for his University of Phoenix courses and was forced to withdraw from the program. Mr. Michael had no knowledge of Defendants' lawsuit against him prior to this levy. FAC ¶¶ 17-19.

In July of 2012, Mr. Michael moved from Eritrea to Hayward, California. While in Hayward he obtained a new job and shortly thereafter he moved to San Jose, California. Mr. Michael opened a JP Morgan Chase Bank account in September of 2012. He then started depositing money into his Chase account. FAC ¶¶ 20-21.

In early 2013, Mr. Michael received a letter from Chase informing him that they had received a garnishment to enforce a judgment against him and they had placed a hold on his account in the amount of $327.03. The letter stated that the order amount for the garnishment was $10,048.53, and enclosed the levy papers. FAC ¶ 22.

In March of 2013, Chase paid to the officer of the Bergen County Court the initial levy amount of $327.03, withdrawing the amount from Mr. Michael's Chase account.  FAC ¶ 23.  Chase

charged an additional "Legal Processing fee" of $125.00. The levy and the "Legal Processing fee" constituted all of the available funds in Mr. Michael's account. FAC ¶ 24.

The documents sent to Mr. Michael by Chase and by Defendants indicate that Defendants caused a levy to be issued to Chase at its Ohio location. Michael Decl., Exhs. 1 and 2.  Defendants did not domesticate or otherwise render the New Jersey judgment collectable in the State of California. FAC ¶ 25.

## III.   ARGUMENT

### A.   This Court has Specific Jurisdiction Over Both Defendants and General Jurisdiction Over Defendant New Century Financial Services

#### 1.   This Court has Specific Jurisdiction To Hear this Matter Since the Defendants Directed their Actions at California and Michael was Injured in California

Defendants wrongly contend that Michael has not plead sufficient facts to support a finding of specific jurisdiction over the Defendants. In order for a court to determine that specific jurisdiction is appropriate it must be established that:

(1) The non-resident defendant must have purposefully directed his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and,

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.2004). In Defendants' brief they characterize their actions as though they were completely unaware that they were making any contact with California or that contact with California was highly probable. They claim Mr. Michael, in the FAC, "does not allege that Defendants knew he resided in California, that Defendants' conduct

was 'aimed' at California, or that Defendants knew Michael would suffer any harm in California." *See* Motion to Dismiss at 7. As will be demonstrated, the FAC does allege facts that show Defendants took actions directed at California and that Defendants knew that their conduct would harm Mr. Michael in California.

When a Defendant submits a Motion to Dismiss as their initial pleading, a plaintiff need only make a prima facie showing of personal jurisdiction. *Data Disc, Inc. v. Systems Tech Assocs.*, Inc. 557 F.2d 1280, 1285 (9th Cir.1977). When there has been no evidentiary hearing, a court may look at the pleadings and any attached affidavits to determine whether Plaintiff has established a prima facie showing. *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995). To support Mr. Michael's claim that this court has personal jurisdiction, Mr. Michael has submitted a declaration. Courts should "resolve all disputed facts in favor of the plaintiff." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). Mr. Michael's Declaration and the FAC support a finding that 1) Defendants purposefully directed collection activity at California, 2) Mr. Michael's claim arises out of Defendants' California-related activities, and 3) the exercise of personal jurisdiction is reasonable.

> ### a. Defendants Purposefully Directed their Collection Activities at California by Obtaining Levies on Bank Accounts They Knew Were Located in California.

To support a finding of specific jurisdiction, Plaintiff must first show that Defendants took actions directed at the forum state. *Schwarzenegger, supra,* 374 F.3d at 802. Defendants claim that their actions were aimed at New Jersey, however the Defendants' actions were aimed at California and directly affected Mr. Michael in California. "In order to satisfy the first prong of this test, the defendant need not have been physically present in the jurisdiction to conduct the activity giving rise to the cause of action." *Metropolitan Life Ins. Co. v. Neaves*, 912 F.2d 1062, 1065 (9th Cir. 1990).

Personal jurisdiction over a defendant is proper when their conduct in a foreign state affects the plaintiff in the forum state, establishing that the forum state is the focal point of the harm suffered. *Calder v. Jones*, 465 U.S. 783, 789 (1984) Courts have "typically treated 'purposeful availment' somewhat differently in tort and contract cases." *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). In tort cases, courts "inquire whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* Defendants acknowledge in their brief that this is a tort case. *See* Motion to Dismiss at 7, ln 7. It is proper to employ the "effects test" to determine whether specific jurisdiction is present.

In order to pass the "effects test," it must be established that 1) the defendants committed an intentional act, 2) the intentional act was expressly aimed at the forum state, and 3) the act caused harm that the defendant knows is likely to be suffered in the forum state. *Yahoo, supra,* 433 F.3d at 1206. Defendants argue that their actions were aimed at New Jersey since that is where the initial lawsuit was filed and that is where they obtained a judgment. *See* Motion to Dismiss at 7. They argue that the levies in question were issued in New Jersey, and that Defendants had no way of knowing that Mr. Michael would be harmed in California. *Id.* at 7-8. However, Defendants knew that Mr. Michael lived in California, as evidenced by the documents they sent to his home in San Jose. *See* Alazar Decl. ¶ 2-3. Exhibits 1, 2. As Defendants knew that Mr. Michael lived in California, they could surmise that he would experience harm in California. For the reasons laid out below, Defendants' actions satisfy the "effects test" and personal jurisdiction is appropriate since Defendants purposefully directed their actions at Plaintiff in California.

//

//

**i. Defendants Fulfill the First Prong of the Effects Test when they Intentionally Placed the Levy**

Per the "effects test," it must be established that Defendants committed an intentional act. *Yahoo, supra,* 433 F.3d at 1206. Defendants issued levies in order to enforce a default judgment. These actions were unquestionably intentional.

**ii. The Second and Third Prongs of the Effects Test are Satisfied Since Defendants Expressly Aimed their Collection Activities at Mr. Michael Whom they Knew Lived in California**

Although Mr. Michael's assets were located in bank accounts that he opened and used while in California, Defendants contend the actions to remove those funds were committed in New Jersey and further contend that this demonstrates that Defendants did not direct any actions towards California. *See* Motion to Dismiss at 7-8. This misconstrues the "effects test" which allows, "the exercise of jurisdiction over a defendant whose only contact with the foreign state is the 'purposeful direction' of a foreign act having effect in the forum state." *Calder, supra,* 465 U.S. at 789. Even if it is true that Defendants acted in New Jersey, the effects of their conduct were felt by Michael in California.

In order to effectuate their judgment, Defendants attached levies to bank accounts Mr. Michael opened in California. It does not matter if their actions were taken in New Jersey; these actions had the real effect of removing funds from the accounts Mr. Michael opened in California. Defendants argue that there is no way they could have known that Mr. Michael was a resident of California. *See* Motion to Dismiss at 7. As stated above, Defendants had actual knowledge that Mr. Michael resided in California and any steps to enforce the judgment would affect him in California. In January or February of 2013, Mr. Michael received correspondence from Chase which included the levy documents. Michael Decl. ¶ 2. The levy itself contains Mr. Michael's California address.

Michael Decl., Exh. 1. In addition, Defendants sent Mr. Michael a Notice of an Order Turnover to his address in San Jose, California. *Id.* Exh. 2. Had Defendants not known where Mr. Michael lived, then they would have been unable to mail documents to his California home. The receipt of these documents at his home address demonstrates that Defendants were aware that Mr. Michael lived in California and his harm would be experienced here. The second prong of the "effects test" is satisfied, "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

Defendants' actions also satisfy the third prong of the effects test.  In *Keeton v. Hustler Magazine*, Inc., 465 U.S. 770, 780 (1984), the court noted that "[t]he plaintiff's residence is not…completely irrelevant to the jurisdictional inquiry…[p]laintiff's residence in the forum may…enhance defendant's contacts with the forum." In *Keeton* the court reversed a ruling that the respondent could not have known that the petitioner would be harmed in the forum state. *Id.* It reasoned that "it is undoubtedly true that the bulk of the harm done to petitioner occurred outside the [forum state]. But that will be true in almost every libel action…[t]he victim of libel, like the victim of any other tort, may choose to bring the suit in any forum with which the defendant has 'certain minimum contacts.'" *Id.*

According to *Keeton,* Mr. Michael's residence should be taken into consideration since he resided in California when he opened the accounts and lived in San Jose when the second account was levied. Even if the bulk of the harm had occurred elsewhere, this alone would support a finding of minimum contacts and personal jurisdiction. In fact, the bulk of the harm was suffered within the forum state.

**b. The Claims of the FAC Arise out of Defendants' Forum Related Actions when They Placed Levies on Mr. Michael's Bank Accounts Without First Domesticating the Judgment**

To support a finding of specific jurisdiction, the plaintiff's claim must be one that "arises out of or relates to the defendant's forum-related activities." *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007). Mr. Michael's claim arises out of Defendants' levies placed on the bank accounts Mr. Michael opened in California. To satisfy this requirement courts employ a "but for" test, requiring that plaintiffs show that they would not have suffered harm "but for" Defendants' forum related conduct. *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1075 (9th Cir. 2001). Clearly, Mr. Michael would not have suffered the complained of harm had Defendants refrained from levying his funds.

The very similar case of *Pelaez v. MCT Group, Inc.*, 2011 WL 500215 (D.Nev.2011) is instructive. In *Pelaez*, plaintiff brought a Fair Debt Collection Practices Act ("FDCPA") action after defendant served Chase in California in order to levy plaintiff's wages in Nevada. Defendant challenged personal jurisdiction. The court held that defendant had "purposefully availed itself within the district", stating that "the communications sent to Plaintiff by MCT, together with its attachment of Plaintiff's Nevada bank account, are the very subject matter of the action pursuant to the FDCPA." *Id.* at 3. The court also cited the FDCPA's policy to provide a convenient forum for consumers, stating that "if it becomes more difficult and costly for consumers to file suit, consumer protection within the states would be eroded." *Id.* at 3, quoting *Gilmore v. Account Management, Inc.*, 2009 WL 2848278 at 4 (N.D.Ga., 2009). This policy is particularly appropriate to consider in this case, where the very failure to use California process is both the wrongful act, and the grounds upon which Defendants argue they are not subject to California jurisdiction.

To support their contention that the levy was not the source of the harm Mr. Michael suffered, Defendants cite *Rupert v. Bond*, 2013 WL 5272462, *16 (N.D. Cal. 2013). The facts of *Rupert* are

dissimilar from our case since the plaintiff in *Rupert* was fundamentally concerned with challenging a number of actions taken by defendants in Oregon relating to a trust that existed in Oregon. *Id.* at 3-15. The only issue that is similar to the instant case involves the Cartwright defendants who issued a writ of garnishment on plaintiff's California bank accounts which resulted in the removal of funds from plaintiff's checking account. *Id.* at 55. While the Complaint claimed that this was "improper," the plaintiff set forth no allegations explaining why this was so.  The court noted "this is merely a legal conclusion and does not demonstrate that these actions caused Plaintiff to suffer harm in California." *Id.* at 16. Thus it appeared that Rupert's sole complaint concerning the levy was that he believed no judgment should have been taken against him in the first place, rather than a complaint about the method by which the levy was effectuated.  In contrast with the *Rupert* plaintiff, Mr. Michael has very specifically alleged that the levy was improper and thus *Rupert* is distinguishable. *Pelaez*, *supra*, is a more analogous case.

### c. Exercising Personal Jurisdiction In this Case Is Reasonable Since the Burden Placed on the Defendant in Adjudicating this Case in California is Minimal and California has a Strong Interest in Protecting Residents that have been Tortiously Injured.

The final prong of the personal jurisdiction analysis requires that "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, *supra,* 374 F.3d at 802. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* Mr. Michael has demonstrated that the Defendants have purposefully directed their activities at California and this claim arises out of Defendants conduct within California, it is now Defendants' burden to show that jurisdiction would not be reasonable.

Courts analyze seven factors in determining whether jurisdiction is reasonable:

(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Paccar Int'l v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1065 (9th Cir.1985).

No one factor is dispositive, rather courts balance the seven when determining the reasonableness of jurisdiction. *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991). However, "[o]nce it has been shown that the defendant purposely availed himself of the forum's benefits, the forum's exercise of jurisdiction over him is presumptively reasonable." *Corporate Inv. Business Brokers v. Melcher*, 824 F.2d 786, 790 (9th Cir. 1987).

First courts look at the extent of defendant's "purposeful interjection" into the forum state's affairs. "Ninth Circuit cases give the 'purposeful interjectment' factor no weight once it is shown that the defendant purposefully directed its activities at the forum state." *Id.* The Supreme Court does not even include this attribute in their list of reasonableness factors. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Since it has already been shown that Defendants have purposefully directed their activities at the forum state, this factor should be given no weight. Even if the court considered this factor, it would weigh in Mr. Michael's favor. Defendants went around California's domestication requirements to levy Mr. Michael's California bank accounts and remove his available funds. Defendants' failure to domesticate their judgment caused Mr. Michael harm in California.

The second factor measures the burden on the defendant in litigating in California. Although Defendants are New Jersey residents, they would not be heavily burdened by having to litigate this case in California. Defendant New Century Financial Services have in fact recently filed domestication of judgment pleadings in California, showing that having to litigate this case would be no great burden. *See* Request for Judicial Notice, Exh. 1-3.

In *Sinatra v. National Enquirer, Inc*., 854 F.2d 1191, 1199 (9th Cir. 1988), the court examined the burden on the Defendant in light of the corresponding burden on the Plaintiff. If Defendants are burdened in coming to California, then Plaintiff would be just as much burdened if not more so if he were forced to litigate this matter in New Jersey considering that he does not have the financial well-being that Defendants' have as a corporation and a law firm. Furthermore, the court in *Sinatra* stated that the burden on the Swiss defendant in having to come to California was not "so great as to constitute a deprivation of due process." *Id*. The court recognized that the "modern advances of communications and transportation have significantly reduced the burden of litigation." *Id.* The court in *Sinatra* did not consider that litigating in California would be too great a burden on the Swiss Defendant. Hearing this case in California would not be too great a burden on Defendants as evidenced by the fact that one of the Defendants has already litigated other matters in California as a Plaintiff.

The third factor is the extent of conflict with Defendants' home state of New Jersey. Courts have looked at the defendant's state's likely interest in adjudicating the case. *Dole Food Co., supra*, 303 F.3d at 1115 (9th Cir. 2002). Courts have determined that even in the case of foreign defendants, this factor is not dispositive. *Zherebko v. Reutskyy*, 2013 WL 4407485, 15 (N.D. Cal. 2013). Defendants may argue that exercising jurisdiction conflicts with the judgment they obtained in New Jersey, but Mr. Michael is challenging the mechanisms Defendants employed to collect on that judgment in California.

The fourth factor weighs heavily in Mr. Michael's favor. It is a well-established that California has "a strong interest in providing an effective means of redress for its residents who are tortiously injured." *Ibrahim v. Dep't of Homeland Sec*., 538 F.3d 1250, 1259 (9th Cir. 2008); quoting *Ziegler v. Indian River County*, 64 F.3d 470, 476 (9th Cir. 1995). Mr. Michael is a California resident

that has been tortuously injured. As discussed in *Pelaez*, *supra*, there is a particularly strong interest in affording FDCPA claimants with a convenient forum to challenge debt collection abuses.

The fifth factor concerns the efficiency of the forum and does not weigh in favor of either party. In analyzing this factor, courts have looked "primarily at where the witnesses and the evidence are likely to be located." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1489 (9th Cir. 1993). While some of the witnesses to this matter may be located in New Jersey and Ohio, Mr. Michael is in California. The evidence likely consists primarily of documents, which can easily be transported to California. This factor proves neutral.

Sixth, courts look at the importance of the forum to the Plaintiff's interest in convenient and effective relief. This factor weighs heavily in Mr. Michael's favor. In *Menken, supra,* 503 F.3d at 1061, the court determined this factor favored the Plaintiff since part of the Plaintiff's claim involved a violation of a forum state statute. The court recognized that the Plaintiff "may not get effective relief in another forum." Similarly, Mr. Michael's underlying claim involves Defendants' levy without compliance with California's domestication laws. Since it is California's law, it is likely that Mr. Michael cannot get effective relief in an alternative forum.

Lastly, there is no reasonable alternative forum for Mr. Michael to bring his claim. Although this action is brought in federal court, Mr. Michael's action intricately implicates California's domestication principles. No other forum would have the same interest in effectively adjudicating this issue. Furthermore, whether another forum exists "becomes an issue only when the forum state is shown to be unreasonable." *Sinatra, supra,* 854 F.2d at 1201. As shown above, California is a reasonable forum.

//

//

### 2. __The Court Has General Jurisdiction Over New Century Financial Services__

If the nonresident defendant's activities within a state are "substantial" or "continuous and systematic," there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities. *Data Disc, Inc., supra*, 557 F.2d at 1287. New Century Financial Services' website indicates that it meets this requirement, as it purchases "national portfolios."  As debt portfolios generally consist of hundreds or thousands of accounts, and California is home to approximately 10% of the nation's residents, New Century undoubtedly collects debts from large numbers of Californians. In addition, New Century is involved in domesticating judgments in California, as demonstrated by the court filings attached to the Request for Judicial Notice, Exhs. 1-4.  If the Court believes these facts are insufficient to establish general jurisdiction, Plaintiff requests leave to conduct discovery on this issue, as contemplated in *Data Disc* at 1285, n.1.

### B. __The Rooker Feldman Doctrine Does Not Bar Plaintiff's Claims__

Defendants argue that Plaintiff's claims are barred by the Rooker-Feldman doctrine, claiming that the lawsuit is in essence a challenge of the judgment issued in the New Century state court. Defendants are wrong because Plaintiff does not complain of any "legal error" by the New Jersey court.

Plaintiff complains of essentially of two wrongs committed by Defendants.  First, Defendants levied on his account despite the fact that they failed to serve him in the New Jersey litigation, yet claimed to the court that they did.  Second, after obtaining a default judgment, Defendants levied on Plaintiff's California bank accounts by serving Chase in Ohio, rather than domesticating the

judgment and serving Chase in California.[1]  Taking the second "wrong" first, this claim does not seek to challenge the underlying judgment, and would exist even if the underlying judgment was properly obtained.  Courts have held that "a party may challenge state procedures for enforcement of a judgment, where consideration of the underlying state-court decision is not required." *Kenmen Engineering v. City of Union*, 314 F.3d 468, 476 (10th Cir. 2002).

The legal standard for applicability of Rooker-Feldman in the Ninth Circuit is set forth in *Vacation Village, Inc. v. Clark County,* 497 F.3d 902, 911 (9th Cir.2007), which states "*Rooker–Feldman* applies only when the federal plaintiff both asserts as her injury ***legal errors or errors*** by the state court and seeks as her remedy relief from the state court judgment.") (emphasis added)(quoting *Kougasian v. TMSL Inc.,* 359 F.3d 1136, 1140 (9th Cir.2004)).

Plaintiff's additional assertion that Defendants' collection was wrongful because they had never served him is also not barred by Rooker-Feldman, because Plaintiff claims no "legal error" by the New Jersey court.  This issue was addressed in the factually similar case of *Engelen v. Erin Capital Management*, 2011 WL 3844587, 3 (S.D.Cal.2011), which stated:

> In the present case, Plaintiff alleges that Erin obtained a default judgment against Plaintiff in state court by falsely representing to the state court that Plaintiff had been served with the summons and complaint. In other words, Plaintiff claims that Erin committed extrinsic fraud on the state court to obtain the default judgment. Accordingly, Plaintiff is not alleging that the state court committed error; rather Plaintiff is alleging that Erin committed a wrongful act by engaging in the alleged fraud. This issue is not barred by *Rooker–Feldman.*

The *Engelen* court noted that the Ninth Circuit had ruled that claims based on extrinsic fraud are not barred by Rooker-Feldman:

> Extrinsic fraud on a court is, by definition, not an error by that court. It is, rather, a wrongful act committed by the party or parties who engaged in the fraud. *Rooker–Feldman* therefore does not bar subject matter jurisdiction when a federal plaintiff alleges a cause of action for extrinsic fraud on a state court and seeks to set aside a state court judgment obtained by that

---

[1] Plaintiff is more aware of the procedures used by Defendants in the 2013 levy of his Chase account than the 2010 levy of his Bank of America account and thus will focus the discussion on the 2013 levy.

fraud.

*Id*. at 3 (quoting *Kougasian, supra*, at 1141).

The cases cited by Defendants on page 15 of their brief have been shown to be inconsistent with Ninth Circuit precedent.  Though *Bryant v. Gordon & Wong Law Group, P.C.*, 681 F.Supp.2d 1205 (E.D. Cal. 2010) came to a different conclusion than *Engelen*, it was explicitly not followed by *Engelen*.  *Engelen* noted that "[t]he holding in *Bryant*, however, conflicts with the holding in *Kougasian.* When faced with conflicting authority, this Court must follow the binding authority. In this case, the Court must follow *Kougasian,* which was decided by the Ninth Circuit." *Id.* at 4.

Further*, Fleming v. Gordon & Wong Law Group, P.C.*, 723 F.Supp.2d 1219 (N.D. Cal. 2010) and *Williams v. Cavalry Portfolio Services, LLC*, 2010 WL 2889656 (C.D.Cal. 2010) both cite *Bryant* for support, and neither discusses the "legal error" requirement for application of the Rooker-Feldman doctrine.

### C.  Levying Funds in Ohio Violates Due Process and the Fair Debt Collection Practices Act

Defendants' apparent contention is that notwithstanding that Plaintiff resides in California, opened his account in California, and deposited funds in California, they can levy on his Chase bank account by serving Chase in Ohio, without ever domesticating the judgment in California. Defendants' position, if accepted, would have wide-ranging implications for judgment debtors with accounts at national financial institutions, as well as to individuals employed by firms with multi-state presence.  Defendants' position would allow levies and garnishments of bank accounts and wages in distant locations, regardless of whether the judgment debtor, or even the judgment creditor had any meaningful contacts with that state in which the levy or garnishment was effectuated.

Defendants' interpretation of the law would eliminate Californians' rights to use various provisions of California law designed to protect judgment debtors. Code of Civil Procedure §

1710.40 allows California judgment debtors to challenge foreign judgments when they are domesticated here.  Such challenges can be made "on any ground which would be a defense to an action in this state on the sister state judgment."  *Id.*  This includes situations where the judgment was obtained by "extrinsic fraud", or when the judgment was obtained in "excess of jurisdiction." Law Revision Commission Comments to Code of Civil Procedure § 1710.40.

Another example of a right which would be unavailable if Defendants' position is accepted is the "Claim of Exemption" pursuant to California Code of Civil Procedure § 703.510 *et seq*.  This procedure is available to low income individuals who need the funds to be levied or garnished to provide basic support for themselves and their families.[2]

Courts have rejected the expansive implications of Defendants' position, and invalidated attempts to garnish intangible assets such as deposit accounts and wages in states with which judgment debtors have no meaningful connection.  Cases discussing this issue have focused their discussion on the requirements of due process, and also the issue of fixing the situs of intangible assets.

In *Rush v. Savchuk*, 444 U.S. 320 (1980), following an auto accident in Indiana with defendant, another Indiana resident, the plaintiff moved to Minnesota and sued defendant there.  The plaintiff argued that Minnesota was an appropriate venue because State Farm Insurance, which insured defendant and had an obligation to defend him, had locations within Minnesota.  Plaintiff contended that the obligation to defend was a "garnishable res" which established jurisdiction in Minnesota.

The court first noted that in *Shaffer v. Heitner*, 433 U.S. 186, 212 (1977), the Court had established that "all assertions of state-court jurisdiction must be evaluated according to the standards

set forth in *International Shoe* and its progeny." *Id.* at 327.  This meant that "a State may exercise jurisdiction over an absent defendant only if the defendant has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Id.*, quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

In holding that Minnesota's assertion of jurisdiction over defendant violated due process, the court noted that "State Farm's decision to do business in Minnesota was completely adventitious as far as Rush was concerned." *Id.* at 329.  Accordingly, the court held:

> In fact, the fictitious presence of the insurer's obligation in Minnesota does not, without more, provide a basis for concluding that there is *any* contact in the *International Shoe* sense between Minnesota and the insured. To say that "a debt follows the debtor" is simply to say that intangible property has no actual situs, and a debt may be sued on wherever there is jurisdiction over the debtor. State Farm is "found," in the sense of doing business, in all 50 States and the District of Columbia. Under appellee's theory, the "debt" owed to Rush would be "present" in each of those jurisdictions simultaneously. It is apparent that such a "contact" can have no jurisdictional significance.

*Id.* at 329-330.

Plaintiff acknowledges that several courts have stated that *post-judgment* procedures undertaken after a judgment has been obtained in another court are exempt from the due process requirement.  These courts cite dicta in *Shaffer* that "[o]nce it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter."  *Shaffer, supra*, at 210, fn. 36.  Several courts, including the Ninth Circuit have interpreted this footnote to mean that "due process concerns are satisfied, assuming proper notice, by the previous rendering of a judgment by a court of competent jurisdiction"  *See, e.g. Office Depot Inc. v.*

---

[2]  In *Pelaez v. MCT Group, Inc.,* 2011 WL 500215 (D.Nev.2011), discussed *supra*, the plaintiff avoided similar protections in Nevada law by not domesticating a judgment in Nevada and instead levying Chase in California.

*Zuccarini,* 596 F.3d 696, 700 (9th Cir. 2010). As Plaintiff received no "proper notice," this rule is exception to the due process requirement is inapplicable.

Further, while the due process exception for post judgment proceedings is regularly applied in situations where the judgment debtor has acquired or located a tangible asset in another state, or even when a judgment debtor purposefully acquires intangible assets located in another jurisdiction, when a judgment debtor has no connection to the state other than the fortuitous fact that the national institution which holds his funds maintains a location in such state, courts have questioned whether due process should be implicated.

*Livingston v. Naylor*, 920 A.2d 34 (Md.App. 2007) contains an extensive analysis of the due process implications of garnishment actions taken against entities which have a nationwide presence. The court held that a Maryland court could not garnish wages earned in North Carolina, even though the judgment debtor worked at Marriot Hotels which was a Maryland corporation with corporate headquarters in Maryland. *Livingston* contains an extensive analysis of the due process implications of garnishment procedure. In discussing footnote 36 of *Shaffer*, the court noted that it was dicta, and mostly likely was written in contemplation of a situation where the *res* to be garnished was tangible and thus easy to locate. *Id.* at 50. The court questioned the applicability of a due process exemption in post-judgment proceedings where the location of the garnished funds were determined by fortuity rather than any purposeful action of the judgment debtor:

> Suppose the Bank [the judgment creditor in *Bank of Babylon v. Quirk, supra,*] had been trying to reach Quirk's [ *i.e.,* the judgment debtor's] wages, earned in Tennessee working for an employer whose corporate headquarters were in Connecticut, say the Connecticut General Life and Casualty Insurance Company. Or, to make the connection between Quirk and Connecticut even weaker, suppose Quirk worked in Tennessee for an employer principally located in Arkansas, incorporated in Delaware, but which conducted business in Connecticut, say Wal–Mart, Inc. Now one may have difficulty seeing the sense of the *dicta* in footnote 36.

*Id.* at 51, quoting Robert Laurence, *The Off–Reservation Garnishment of an On–Reservation Debt and Related Issues in the Cross–Boundary Enforcement of Money Judgments*, 22 Am. Indian L.Rev. 355, 369 (1998).

The *Livingstone* court concluded that:

> [I]n Livingston's case, in addition to the state of his residence, the state in which he rendered the labor[3] that gave rise to Marriott's obligation to pay wages is the state that can garnish Marriott for those wages without offending the due process standard of fair play and substantial justice.

*Id.* at 53.

Mr. Michael, similar to the judgment debtor in *Livingston*, had no connection to Ohio beyond the apparent fact that Chase lists its address as Columbus, Ohio with the Office of the Comptroller of the Currency. See Defendants' Request for Judicial Notice.  Mr. Michael had no idea where Chase was based. Michael Declaration ¶ 6.  Indeed, it is doubtful that more than a handful of Chase customers know where Chase is based.  Part of the due process analysis is that the defendant must have "purposefully directed activities" in Ohio. *Burger King Corp. supra*, 471 U.S. at 472. This standard is not met any realistic sense. *See State v. Western Union Financial Services, Inc.*  208 P.3d 218, 225 (Ariz. 2009) ("Courts must focus on reality, not fiction.")  As Mr. Michael's connections with the state of Ohio were of the adventitious nature invalidated in *Rush*, the levy of his account there violates due process.  The violation of due process constitutes a violation of the FDCPA. *See, e.g. New v. Gemini Capital Group*, 859 F.Supp.2d 990, 999 (S.D.Iowa 2012) (upholding FDCPA claim based on violation of due process).

//

//

---

[3] Livingston had worked in one of Marriot's Maryland locations for a short time, and the court found that wages owed for this period were garnishable, but not those wages earned while working in the North Carolina location.

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 19

**D.** **The Situs of the Funds Levied was California and Therefore Levy in Ohio was Improper**

Regardless of whether Defendants were required to show that Plaintiff had minimum contacts with the state of Ohio in order to levy his bank account there, Defendants must establish that his Chase funds were actually located in Ohio, where they were levied. If the situs of the funds is California, the levy is unlawful because the judgment was not domesticated. *Kahn v. Berman*, 198 Cal.App.3d 1499, 1505 (1988) ("a sister-state money judgment must first be reduced to a California judgment").

Courts have rejected arguments that the situs of intangible asserts can be established by means of the fortuitous fact that the holder of such assets does business in that state.  For example, in *Williamson v. Williamson*, 275 S.E.2d 42 (Ga. 1981), following divorce in Arizona, plaintiff moved to Georgia and sought to enforce a support order there against her ex-husband, who was enlisted in the U.S. Army and stationed in California.  The plaintiff argued that the U.S. Army was present in every state and thus the wages it owed to her ex-husband could be garnished in Georgia, despite the fact that that the ex-husband lived in California.  The Georgia Supreme Court rejected the argument, and held "[t]he plaintiff has failed to establish that the salary of a non-resident armed services member is 'property' in this state." *Id.* at 46.  The reasoning and holding in Williamson was adopted in *Polacke v. Superior Court In and For County of Maricopa*, 823 P.2d 84, 91 (Ariz. 1991), *review denied*, 823 P.2d 84 (1991), and *Ferguson v. Ferguson*, 634 N.E.2d 506, 509 (Ind.App.1994).

Also, in *Livingston, supra*, the court held that the situs of the wages Livingston earned while in North Carolina was not Maryland, although he worked for Marriot Hotels, a Maryland corporation headquartered in Maryland. The court stated:

> [T]he presence of Marriott in all 50 states is not sufficient to support garnishments of its employees in states having no connection with the employees' earning of such wages. Although an employer may be present in all 50 states, as Marriott is, that fact does not support

the conclusion that every employee's wages are present in all such locations and, therefore, subject to garnishment in all 50 states.

*Id.* at 53.

In determining where intangible assets are located, the Ninth Circuit has set forth a common sense approach. "[A]ttaching a situs to intangible property is necessarily a legal fiction; therefore, the selection of a situs for intangibles must be context-specific, embodying a common sense appraisal of the requirements of justice and convenience in particular conditions." *Office Depot Inc., supra*, at 702.  As instructed by the reasoning present in *Rush*, *Williamson* and *Livingston*, this common sense approach should yield the conclusion that the Plaintiff's funds are located where they were deposited.

A few California courts have held that the situs of intangible property for garnishment purposes is "usually" wherever jurisdiction can be maintained over the garnishee. *See, e.g. Waite v. Waite,* 6 Cal.3d 461, 468 (1972).  While this may "usually" be true, consistent with the above decisions, the rule should not be applied where the connection between garnishing state and individual whose funds are garnished is based on fortuity.

*Waite* cited *Harris v. Balk*, 198 U.S. 215 (1905) in support of its "usual" rule, but also acknowledged a contrary California Supreme Court ruling six years prior to Harris. *Fenton v. Edwards & Johnson* 126 Cal. 43, 48 (1899) ("A debt is a mere incorporeal right. It has no situs, and follows the person of the creditor." quoting *Caskie v. Webster*, 2 Wall. Jr. 131, Fed. Cas. No. 2,500).

Since *Waite* was decided, the *Harris* ruling was severely undermined in *Shaffer*.  The Arizona Supreme Court analyzed the questionable viability of *Harris'* pronouncement concerning the situs of intangible assets in *Western Union Financial Services, Inc.*, *supra*.  There, the State of Arizona sought a warrant to seize Western Union money transfers which emanated from states other than Arizona and were directed to Mexico.

The Court noted that the seizure would only be permissible if *Harris'* rule concerning the situs of intangible property was still intact:

> Factual distinctions aside, the State concedes that its argument depends on the continued vitality of the *Harris* fiction that an intangible obligation is located for jurisdictional purposes wherever the obligor can be found. The logical result of the State's contention is that Western Union's "debt" to the Sonoran recipient is simultaneously located in every state in which Western Union can be sued.

> The Supreme Court has stated, however, that Shaffer "interred the mechanical rule that a creditor's amenability to a quasi in rem action travels with his debtor." *World–Wide Volkswagen*, 444 U.S. at 296, 100 S.Ct. 559; *see also id*. (stating that *Shaffer* "abandoned the outworn rule of *Harris v. Balk*, that the interest of a creditor in a debt could be extinguished or otherwise affected by any State having transitory jurisdiction over the debtor"). The court of appeals necessarily construed *Shaffer* narrowly, holding that the *Harris* fiction remained viable to determine the situs of intangible property for purposes of evaluating in rem jurisdiction. *See Western Union*, 219 Ariz. at 350 ¶ 28, 199 P.3d at 605.

> In so concluding, the court of appeals relied on *Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980). That case involved an automobile accident in Indiana; the plaintiff, an Indiana native, was a passenger in a car driven by another Indiana citizen. The plaintiff brought suit in Minnesota after garnishing the obligation of the driver's insurer, State Farm, which conducted business in every state.

> The Supreme Court held that *Shaffer* barred the assertion of quasi in rem jurisdiction, as the driver had no Minnesota contacts. *Id*. at 328–29, 100 S.Ct. 571. The court rejected the constitutional significance of State Farm's obligation to the insured, stating:

> In fact, the fictitious presence of the insurer's obligation in Minnesota does not, without more, provide a basis for concluding that there is any contact in the *International Shoe* sense between Minnesota and the insured. To say that "a debt follows the debtor" is simply to say that intangible property has no actual situs, and a debt may be sued on wherever there is jurisdiction over the debtor. State Farm is "found," in the sense of doing business, in all 50 States and the District of Columbia. Under appellee's theory, the "debt" owed to *Rush* would be "present" in each of those jurisdictions simultaneously. It is apparent that such a "contact" can have no jurisdictional significance.
> Id. at 329–30, 100 S.Ct. 571 (paragraph numbers omitted)

> The court of appeals read this language as recognizing the "ongoing viability" of the *Harris* fiction and standing for the proposition that "if a foreign corporation is subject to general in personam jurisdiction in Arizona, its debts can be considered within this state for purposes of in rem jurisdiction." *Western Union*, 219 Ariz. at 350 ¶ 28, 199 P.3d at 605.  To the contrary, *Rush* simply recognized the complete constitutional irrelevance of the *Harris* fiction to state assertions of quasi in rem jurisdiction. Because the only issue in such a case is whether the party against whom the plaintiff seeks to impose ultimate liability is subject to the in

personam jurisdiction of the forum, the situs of intangible property unrelated to a plaintiff's claim has no application whatsoever after *Shaffer* to the constitutional analysis. *Rush* thus simply ignored the *Harris* fiction; it did not approve its use in analyzing in rem jurisdiction.

*Western Union* also found that pre-*Shaffer* cases which cited *Harris* to establish that intangible property were not persuasive:

> The court of appeals also cited *Weitzel v. Weitzel*, 27 Ariz. 117, 230 P. 1106 (1924), for the proposition that a debt owed by a non-Arizona corporation was located here because the corporation was subject to Arizona service. But *Weitzal* was decided half a century before Shaffer and expressly relied on the Harris fiction. *Id.* at 121, 230 P. 1106, 230 P. at 1107.

Accordingly, the rule established in *Waite*, even if it were to apply to "fortuitous" situations like the case at bar, should be disregarded because it rests upon the discredited *Harris* ruling.  As Mr. Michael opened the accounts in California, lived in California, and deposited funds in California, the situs of the accounts is in California.  Accordingly, the accounts could only be levied pursuant to California rules of process.

### E.  <u>Plaintiff's FDCPA and UCL Claims Are Not Defeated by *Yu v. Signet*</u>

Defendants argue that the holding in *Yu v. Signet Bank/Virginia,* 69 Cal.App.4th 1377, 1396, (1999) bars plaintiff's FDCPA claims and UCL claims.  Defendants base their argument on *Yu's* holding that Yu could not assert a direct cause of action for violation of California's domestication statutes. This argument fails.  Even if Defendants are correct that Plaintiff cannot sue for violation of the California domestication statutes, Plaintiff can sue for violation of the federal FDCPA, which prohibits using unfair or unconscionable means to collect or attempt to collect a debt (15 U.S.C. §1692f), using a false representation or deceptive means to collect or attempt to collect a debt (15 U.S.C. § 1692e and e(10), and 15 U.S.C. § 1692e and e(5) taking actions that cannot legally be taken. (15 U.S.C. § 1692e and e(5). These provisions would make actionable any unlawful debt collection practices such as those described above.

Put differently, Plaintiff's claims are based on what Defendants did, rather than what they did not do. The California domestication statute offered a legal method through which Defendants could have attempted to collect on their judgment.  Defendants did not take advantage of this.  Instead, Defendants proceeded in a manner which violated the law.  Plaintiff's claim is based on these unfair and unlawful acts.

### F.  <u>Plaintiff Should be Allowed to Amend if the Motion to Dismiss is Granted</u>

"Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend 'shall be freely given when justice so requires,' bearing in mind 'the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities.'" *Rupert v. Bond,* 2013 WL 5272462, 5 (N.D.Cal.2013) quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (internal quotation marks and alterations omitted).

After receiving Defendants' motion to dismiss, Plaintiff drafted a proposed Second Amended Complaint and requested that Defendants stipulate to its filing.  The proposed Second Amended Complaint includes additional facts which may be relevant to the court's analysis of the motion to dismiss[4] and includes additional claims. Defendants declined to stipulate to the motion. Kennedy Decl. ¶ 2, Exh. 1.

The proposed Second Amended Complaint is attached to the Declaration of William E. Kennedy.  If the motion to dismiss is granted, Plaintiff requests leave to file a Second Amended Complaint similar to the attached version. Kennedy Decl. Exh. ¶ 1.

The proposed Second Amended Complaint adds the alternative claim that if Defendants were not required to domesticate the judgment in California before levying on Plaintiff's bank accounts in

---

[4] For example, the SAC adds the specific allegation that the Chase levy was served on Chase in Ohio and attaches the documents related to the levy.  Although the FAC does not identify Ohio as the location of the levy, or attach the levy documents, Plaintiff has no objection to the Court considering these facts and documents in deciding this motion.  The documents are attached to the Declaration of Alazar Michael and the Declaration of William E. Kennedy filed herewith.

Ohio, they still improperly caused the New Jersey court to issue the levy to Chase, as the New Jersey court had no authority to order an Ohio entity to levy funds. Restatement (Second) of Conflict of Laws § 67(b) (1969) (writ of garnishment cannot reach property outside the territorial jurisdiction of the issuing court) *Dickstein v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 295 A.2d 943, 947 (N.J.Super.A.D.1996) ("Generally, for a state court to acquire jurisdiction over property it must be located within the state's border." citing *Hanson v. Denckla*, 357 U.S. 235, 246 (1958)).  As such, Chase was required to domesticate the judgment in Ohio before collecting it there.

## IV.      CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss should be denied.  If the motion is granted, Plaintiff should be given leave to amend.

Dated: January 17, 2014             Respectfully Submitted,

                                    LAW OFFICE OF TYLER S. HINZ
                                    CONSUMER LAW OFFFICE OF WILLIAM E. KENNEDY

                        By:      ____/s/_____
                                    WILLIAM E. KENNEDY
                                    Attorneys for Plaintiff ALAZAR MICHAEL