**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ALAZAR MICHAEL,<br>    Plaintiff,<br>        v.<br>NEW CENTURY FINANCIAL SERVICES, et al.,<br>    Defendants. | Case No.  13-cv-03892-BLF<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**<br><br>[Re:  ECF 17] |

Defendants New Century Financial Services ("New Century") and Pressler and Pressler LLP ("Pressler") move to dismiss Plaintiff Alazar Michael's ("Michael" or "Plaintiff") First Amended Complaint ("FAC"). Plaintiff brings suit against Defendants alleging violations of federal and state debt collection and consumer protection statutes, arising out of a levy placed on a bank account owned by Plaintiff in order to collect on a 2001 default judgment entered against Plaintiff in New Jersey state court. Defendants move to dismiss for two reasons: (1) that the Court lacks personal jurisdiction over Defendants, pursuant to Federal Rule of Civil Procedure 12(b)(2); and (2) that the FAC fails to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6).

Having reviewed the briefing and oral argument of the parties, and the governing case law, the Court GRANTS Defendants' Motion to Dismiss pursuant to Rule 12(b)(2), finding that this Court lacks either general or specific personal jurisdiction over Defendants.

**I.    BACKGROUND**

   **A.    Procedural History**

Plaintiff filed his FAC against Defendants on September 25, 2013. (ECF 7) On December 10, 2013, Defendants filed the instant Motion to Dismiss (ECF 17), along with a Request for

1   Judicial Notice ("Defs.' RJN"). (ECF 18) Plaintiff filed his Opposition to the Motion to Dismiss
2   on January 17, 2014 (ECF 23), along with his own Request for Judicial Notice ("Pl.'s RJN").
3   (ECF 26) Defendants replied on February 14, 2014 (ECF 27), and concurrently filed with their
4   Reply objections to the Plaintiff's RJN. (ECF 28)
5       The case was reassigned to the undersigned judge on April 17, 2014, and oral argument
6   was heard on July 17, 2014.

       **B.**     **Factual Allegations in the FAC**

8       The facts below are taken from the FAC and are presumed by the Court, for purposes of
9   this Motion, to be true.
10       Plaintiff is an individual who resides in San Jose, California. (FAC, ECF 7 ¶ 3) New
11   Century is a New Jersey corporation with its principal place of business in Whippany, New Jersey.
12   (*Id.* ¶ 5) Pressler is a New Jersey limited liability company with its principal place of business in
13   Parsippany, New Jersey. (*Id.* ¶ 7)
14       In 2001, New Century filed an action in New Jersey state court against Plaintiff (FAC ¶¶ 1,
15   10), and obtained a default judgment against him. (*Id.* ¶ 14) Though New Century provided the
16   state court with a proof of service, Plaintiff states that he was never served with a copy of the
17   summons and the complaint (*id.* ¶ 12), alleging that the proof of service stated an address at which
18   Michael did not live (*id.*), and listed Michael as a white male, though Michael "is Eritrean, has
19   dark skin and cannot reasonably be mistaken for a white male." (*Id.* ¶ 13)
20       From 1996 through 2009, Michael resided in the African nation of Eritrea (FAC ¶ 12),
21   returning to New Jersey only once, in 2006. (*Id.*) In 2009, Michael moved briefly to Chino Hills,
22   California, in order to begin a graduate program at the University of Phoenix. (*Id.* ¶ 15) While in
23   Chino Hills, Michael opened a bank account with Bank of America. (*Id.* ¶ 16) Michael returned to
24   Eritrea after a month, and in 2010, while still residing in Eritrea, attempted to pay for his
25   university coursework with funds from his Bank of America account. (*Id.* ¶ 17) Defendants
26   removed approximately $2,900 from this account. (*Id.*) Michael "had no knowledge" of New
27   Century's prior action against him before this levy. (*Id.* ¶ 19)
28       In 2012, Michael moved from Eritrea to Hayward, California; soon thereafter, he moved

United States District Court
Northern District of California

from Hayward to San Jose. (FAC ¶ 20) In September 2012, Michael opened a bank account with JP Morgan Chase Bank ("Chase") (*id.* ¶ 21), and in early 2013 received a letter from Chase informing him that the bank had received a garnishment to enforce a judgment against him in the amount of $10,048.53. (*Id.* ¶ 22) Chase placed a hold on his account in the amount of $327.03, and in March 2013 paid this amount to the officer of the Bergen County, New Jersey court (*id.* ¶¶ 22-23), as well as charged a $125 "legal processing fee" to Michael, leaving his bank account with a zero balance. (*Id.* ¶ 24)

Defendants did not domesticate, or register, the New Jersey default judgment in California, which Plaintiff alleges contravenes California's Sister State Money-Judgments Act. *See* Cal. Code Civ. P. § 1913. Plaintiff's FAC alleges three causes of action, arising under: (1) the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692 *et seq.*; (2) California's Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788; and (3) California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. Plaintiff seeks damages, including emotional distress damages, attorneys' fees and costs, and injunctive relief. (FAC at p. 8-9)

Defendants move this Court to dismiss, arguing, among other theories, that this Court lacks personal jurisdiction over them. The Court agrees, and therefore declines to reach the other arguments made by Defendants in their Motion to Dismiss.

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

Once a defendant brings a challenge to the court's jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *See, e.g.*, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-01 (9th Cir. 2004); *see also Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (stating that a plaintiff must "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction").

When, as is the case here, the Motion is based on written materials and not an evidentiary hearing, Plaintiff "need only make a prima facie showing of jurisdictional facts." *Schwarzenegger*, 374 F.3d 797, 800. "Uncontroverted allegations in the complaint must be taken as true," *id.*, but Plaintiff cannot "simply rest on the bare allegations of its complaint." *Amba Mktg. Sys., Inc. v.*

3

*Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Conflicts between facts contained within declarations or affidavits are resolved in the Plaintiff's favor. *Mattel, Inc. v. Greiner & Hauser GmbH*, 354 F.3d 857, 861-62 (9th Cir. 2003).

In the absence of a specific statutory provision conferring jurisdiction, federal courts apply the personal jurisdiction laws of the state in which they sit. California's long-arm jurisdictional statute is "coextensive with federal due process requirements." *Panavision Int'l, LP v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). In order for the Court to exercise jurisdiction, a defendant must have sufficient "minimum contacts" with the forum state, such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Jurisdiction can be either general, where a party can be haled into that state's court for any reason, or specific, which permits a court to exercise jurisdiction over a defendant only with regard to a particular activity, transaction, or dispute. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984).

### B. Requests for Judicial Notice

Both parties have requested that the Court take judicial notice of certain documents. In general, a court should not look beyond the four corners of a complaint when ruling on a motion to dismiss. *See, e.g.*, *Swartz v. KPMG, LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Pursuant to Federal Rule of Evidence 201, however, the Court is permitted to take judicial notice of adjudicative facts "not subject to reasonable dispute," and "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Mack v. S. Bay Beer Distribs.*, 798 F.2d 1282 (9th Cir. 1986) (permitting the court to take judicial notice of "matters of public record").

Defendants' Request for Judicial Notice ("Defs.' RJN") asks the Court to take judicial notice of a document from the website of the Office of the Comptroller of the Currency which states that Bank of America, N.A. and J.P. Morgan Chase Bank, N.A., are classified as national banks. (Defs.' RJN, ECF 18 at 1) Plaintiff does not object to Defendants' request. A court can properly take notice of undisputed information available on a government website. *See, e.g.*, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (judicially noticing

4

1  information contained on a government website when neither party disputes either the website's
2  authenticity or the accuracy of the information displayed therein). The Court thus GRANTS
3  Defendants' RJN.
4      Plaintiff requests that the Court judicially notice four documents (Pl.'s RJN, ECF 26): (1)
5  New Century's Application for Entry of Sister-State Judgment in *New Century Financial Services,*
6  *Inc. v. Patricia E. Trujillo (Trujillo)*, San Francisco Superior Court Case No. CPF-12-512409
7  (filed August 16, 2012); (2) New Century's Proof of Service in *Trujillo*; (3) a screenshot of the
8  Register of Actions in *Trujillo*; and (4) screenshots of the Case Summary and Register of Actions
9  in *New Century Financial Services, Inc. v. Suh Y. Lee (Lee)*, Orange County Superior Court Case
10  No. 30-2013-00688586-CL-EN-CJC.
11      Defendants object to each of the four documents Plaintiff seeks to have noticed, on the
12  grounds that "the accuracy of their contents is disputed and reasonably questionable." (Defs.' Obj.
13  to Pl.'s RJN, ECF 28 at 2 (citing Fed. R. Evid. 201(b)(2)) Defendants allege that New Century
14  was not a party to the *Trujillo* or *Lee* actions, because "New Century no longer owned the
15  judgments when the two actions were commenced and was not a party to those actions." (*Id.*)
16  Defendants argue that New Century "was only named as the plaintiff because it was the plaintiff in
17  the original litigation resulting in the judgments." (*Id.*)
18      Defendants' objection, however, does not call into question the *accuracy* of the documents
19  for which Plaintiff seeks judicial notice. Defendants further do not allege that the documents or
20  screenshots are inauthentic. Instead, the objection asks the Court not to draw specific inferences
21  from those documents. The Court is, however, merely taking judicial notice that these four
22  documents have either been publicly filed with a court within this state or are documents available
23  from a government website. *See Daniels-Hall*, 629 F.3d 992, 998-99; *see also United States ex rel.*
24  *Robinson Racheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (permitting
25  the court to take judicial notice of the existence of a judicial or administrative proceedings, but not
26  the veracity or arguments or disputed facts contained therein).
27      Thus, the Court takes judicial notice of the existence of the four documents provided to the
28  Court by Plaintiff, pursuant to Federal Rule of Evidence 201. Whether these documents are

relevant will be considered separately by the Court.

## III. DISCUSSION

Defendants argue that, as New Jersey companies attempting to collect on a judgment rendered by a New Jersey court, they have not purposefully directed activities at California sufficient for this Court to exercise personal jurisdiction over them. Plaintiff, in contrast, argues in his briefing that the Court has general jurisdiction over New Century and specific jurisdiction over both New Century and Pressler.

The Court, having considered Plaintiff's arguments, finds that Defendants' acts have too attenuated a link to California for them to be haled into Court in this forum. The Court considers each of the jurisdictional arguments in turn.

### A. General Jurisdiction

A party is subject to general jurisdiction when its contacts with a forum state are "substantial" or "continuous and systematic." *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1287 (1977). A party is subject to general jurisdiction only when its contacts with the forum are so pervasive that it would be considered objectively reasonable for that party to be brought before a court in the forum for *any* dispute, "even if the cause of action is unrelated to the defendant's forum activities." *Id.* "Sheer speculation" and "vague representations" of a party's contacts with the forum are insufficient to subject that party to general jurisdiction, *see Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1308 (N.D. Okla. 2011) (requiring evidence of "continuous and systematic general business contacts" with the state), because the standard for exercising general jurisdiction is an "exacting" one. *Schwarzenegger*, 374 F.3d 797, 801 (9th Cir. 2004).

Plaintiff argues that New Century, as a purchaser of national debt portfolios "consist[ing] of hundreds or thousands of accounts," likely purchases and collects on debts from "large numbers of Californians." (Opp. to Mot. to Dismiss at 13 (stating that California "is home to approximately 10% of the nation's residents")) Further, Plaintiff argues that New Century "is involved in domesticating judgments in California," availing itself of the state court system in a manner Plaintiff believes is sufficient for this Court to exercise jurisdiction over New Century in

6

1    California even if the instant action were found to be unrelated to New Century's activities in

2    California. (*Id.* (citing *Data Disc*, 557 F.2d 1280, 1285))[1]

3    The Court rejects this argument. The mere fact that New Century purchases portfolios

4    which possibly hold the debts of California residents, based on no information other than the fact

5    that California makes up over ten percent of the nation's population, is precisely the form of

6    speculation and vague representations that courts have rejected as bases for general jurisdiction.

7    *See, e.g.*, *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 (2d Cir. 1996)

8    (compiling cases that discuss the "continuous and systematic general business contacts" standard).

9    It would be an unwarranted and substantial expansion of the jurisdictional power of this Court,

10   and any California court – or, for that matter, courts in New York, Texas, Florida, or any other

11   state with a large population – to find that the state's population size alone entitles it to demand

12   that national actors, in this case the purchaser of a national debt portfolio, come before its courts.

13   Plaintiff's second basis for general jurisdiction, that New Century domesticates judgments

14   in California courts, is also insufficient. The Ninth Circuit has held that the act of domesticating a

15   judgment, by itself, is inadequate for even *specific* jurisdiction. *See Menken v. Emm*, 503 F.3d

16   1050, 1061 (9th Cir. 2007) ("The simple domestication of a foreign judgment in Arizona, standing

17   alone, is unlikely sufficient to confer personal jurisdiction on the judgment creditor."). Plaintiff

18   describes just two instances in which it claims New Century has domesticated foreign judgments

19   in California, *Trujillo* and *Lee*. (*See* Opp. to Mot. to Dismiss at 13) However, Plaintiff's evidence

20   is insufficient to establish New Century's alleged California activities: New Century denies that it

21   was the party that commenced litigation in California courts in order to domesticate judgments in

22   *Trujillo* or *Lee*, and presents evidence to support this argument.

---

[1] Plaintiff asks this Court give it leave to undertake jurisdictional discovery on this question. (Opp. to Mot. to Dismiss at 13) Plaintiff does not, however, outline the scope of such desired discovery, *see Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008), or provide the Court with clear reasons how such discovery would allow them to demonstrate sufficient business contacts with California to establish general jurisdiction over New Century. *See Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (upholding a trial court's denial of jurisdictional discovery when such discovery was requested based on a mere belief that discovery could enable a plaintiff to demonstrate sufficient contacts with California such that jurisdiction would be appropriate). The Court DENIES Plaintiff's requested leave to undertake jurisdictional discovery as to New Century.

1    Plaintiff's own evidence belies his contention. The Application for Entry of Sister-State
2    Judgment in *Trujillo* shows that the moving party was not New Century, but rather First
3    Resolution Investment Corporation. (ECF 26-1 at 2) The Declaration of Jeffrey Esposito, New
4    Century's Director of Operations, states that New Century sold the *Trujillo* judgment to First
5    Resolution on or about April 23, 2010, over two years prior to the date on which the *Trujillo*
6    application was filed. (Esposito Decl., ECF 27-1 ¶ 5) Esposito further states that New Century
7    sold the *Lee* judgment to First Resolution on that same date (*id.* ¶ 7), direct evidence that New
8    Century was not involved in the *Lee* collection efforts. The screenshot of the Case Summary and
9    Register of Actions in *Lee* does not provide any evidence that New Century was responsible for
10   commencing the litigation in California courts. (*See* ECF 26-4) As such, the Court finds that the
11   documents submitted by Plaintiff do not show that New Century domesticated judgments in
12   *Trujillo* or *Lee* in California courts.
13   The Court finds under the facts before it that New Century is not subject to general
14   jurisdiction in California.

**B.     Specific Jurisdiction**

The Ninth Circuit Court of Appeals, in *Schwarzenegger*, established a three-prong test for determining whether a non-resident defendant is subject to specific personal jurisdiction:

> (1) The non-resident defendant must *purposefully direct* his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one that *arises out of or relates to* the defendant's forum-related activities;
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. *it must be reasonable*.

*Schwarzenegger*, 374 F.3d 797, 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)) (emphasis added).

When a case sounds in tort, as this one does, the Court is concerned with whether the Defendants have "purposefully directed" their activities at the forum state. This is distinct from the analysis for cases sounding in contract, where courts look to "purposeful availment." *Id.* at 802-04. Plaintiff bears the burden of proof with regard to the first two elements. *See, e.g.*, *Sher v.*

8

1   *Johnson*, 911 F.2d 1357, 1361 (1990). If Plaintiff satisfies his burden as to the first two elements,
2   the burden then shifts to Defendants to "present a compelling case" that exercising jurisdiction
3   would be unreasonable. *See, e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).
4       The Court finds that Plaintiff has not met his prima facie burden to show that Defendants
5   are subject to personal jurisdiction, having failed to show that Defendants purposefully directed
6   activities at the state of California.

### *1.   Purposeful Direction*

Purposeful direction requires a showing that the Defendants' "actions outside the forum state are directed at the forum." *Schwarzenegger*, 374 F.3d 797, 802-03. This requires that the Court engage in a three-part "effects" test, first articulated in *Calder v. Jones*. 465 U.S. 783 (1984). In order for the Court to appropriately exercise its jurisdiction, the *Calder* test requires that Defendants: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002) (citing *Calder*). Failing to plead any one of these three elements is fatal to Plaintiff's attempt to exercise jurisdiction. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128-29 (9th Cir. 2010).

In 2014, the Supreme Court revisited the *Calder* test, and the broader question of minimum contacts, in *Walden v. Fiore*, 134 S. Ct. 1115 (2014). *Walden* involved a *Bivens* action brought by two plaintiffs against a DEA agent. The plaintiffs were professional gamblers traveling through Atlanta's Hartsfield-Jackson International Airport with approximately $97,000 in cash, en route from Puerto Rico to Las Vegas, Nevada. Their funds were confiscated by Walden, the DEA agent, and were not returned to plaintiffs despite their providing documentation that the money was derived from legitimate professional gambling activities. Plaintiffs accused Walden of drafting a false affidavit to show probable cause for the forfeiture, which was forwarded to the United States Attorney's office in Georgia. *Walden*, 134 S. Ct. 1115, 1119-20. Plaintiffs filed a *Bivens* action in the District of Nevada, which the court dismissed for lack of personal jurisdiction. A divided panel of the Ninth Circuit reversed, finding that Walden's actions in Georgia could suffice for the Nevada court to exercise jurisdiction, because Walden had "expressly aimed" his submission of

the false affidavit at Nevada, as the affidavit would affect the two plaintiffs, individuals with a significant connection to Nevada. *Id.* at 1120 (citing 688 F.3d 558, 577).

A unanimous Supreme Court reversed, finding that Walden did not have sufficient contacts with Nevada such that the Nevada court could exercise personal jurisdiction over him. Stating that "the plaintiff cannot be the only link between the defendant and the forum," *id.* at 1122, the Court found that "no part of [Walden's] course of conduct occurred in Nevada." *Id.* at 1124. The Court determined that the Ninth Circuit, rather than analyzing Walden's contacts with Nevada, incorrectly "looked to [Walden's] knowledge of [plaintiff's] strong forum connections." *Id.* (finding that such an approach "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis"). Walden's acts took place in Georgia and merely caused harm to two individuals who resided in Nevada. The *Walden* Court ultimately held that *Calder* stands for the proposition that "mere injury to a forum resident is not a sufficient connection to the forum," and that courts analyzing personal jurisdiction must engage in a "forum-focused" inquiry. *Id.* at 1125.

### i. *Intentional Act*

"Courts construe intent in the context of the intentional act test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Cybersitter, LLC v. People's Rep. of China*, 805 F. Supp. 2d 958, 969 (C.D. Cal. 2011). Plaintiff points to two intentional acts for purposes of the purposeful direction test: (1) obtaining a levy on Plaintiff's bank account to enforce the New Jersey judgment, and (2) failing to domesticate their judgment in California prior to levying against Plaintiff's bank account.

### ii. *Express Aim*

Plaintiff must show that at least one of Defendants' intentional acts was expressly aimed at California in order for this Court to exercise jurisdiction. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). He has failed to do so.

#### 1. *The Levy*

Plaintiff argues that Defendants "attached levies to bank accounts Mr. Michael opened in

California." (Opp. to Mot. to Dismiss at 6) Plaintiff further argues that Defendants "sent Mr. Michael a Notice of an Order Turnover" at his San Jose address, (*id.* at 7), evidencing Defendants' knowledge that Michael lived in California and, thus, that the levy was directed at California. Defendants, in contrast, argue that their actions were directed at New Jersey, the location where the 2001 default judgment was issued. (*See* Defs.' Reply at 3-4)  The Court finds that Plaintiff has not met his minimal burden to make a prima facie case that Defendants' conduct was aimed at California. *See Walden*, 134 S. Ct. 1115, 1122.

First, Plaintiff points to two letters he received in regard to the levy. (*See* Declaration of Alazar Michael ("Michael Decl."), ECF 24 Exhs. 1, 2) The first letter, dated January 29, 2013, was sent to Michaels' address in San Jose. (*See* Michael Decl. Exh. 1) This letter, however, was sent by Chase and not by Defendants. (*Id.*) It is not reasonable for the Court to impute Chase's knowledge of Plaintiff's home address onto Defendants. Plaintiff's own allegations in the FAC show why such a logical leap would be too far a jump for the Court to make: Plaintiff alleges that Chase "received a garnishment" (FAC ¶ 22), and, after placing a levy on Plaintiff's account, "paid to the officer of the Bergen County Court the initial levy amount." (*Id.* ¶ 23)  Thus, the only actors implicated by the January 29 letter were Chase and the New Jersey state court. That New Century won the initial default judgment in 2001 that eventually resulted in the levy shows no express aim toward California.

The second letter, sent by Pressler to Michael's address in San Jose (Michael Decl., ECF 24 Exh. 2), was sent nearly two months after the date of the levy. Plaintiff thus has presented no information by which the Court could determine that Defendants knew he was living in California *prior to the date of the levy*. In this case, in particular, the Plaintiff admits that he moved around a great deal – residing at different times in New Jersey, Eritrea, and at least three different cities in California. From the information presented to the Court, Defendants believed that Michael lived in New Jersey in January 2001, when they claim to have served him, and in San Jose, California in March 2013, when Pressler sent Plaintiff a letter.

In his briefing, Plaintiff relies heavily on *Pelaez v. MCT Group, Inc.*, a District of Nevada case in which the plaintiff brought a Fair Debt Collection Practices Act ("FDCPA") claim against

11

the debt collector defendants. *Pelaez*, 2011 WL 500215 (D. Nev. Feb. 10, 2011). In that case, however, the plaintiff presented the court with a collection letter sent by the defendant to her home prior to the date on which her bank account had been attached pursuant to a California Writ of Execution. *Id.* at *1, *3. The court found that "receipt of a collection notice is a substantial part of the events giving rise to a claim under the [FDCPA]." *Id.* at *3 (citing *Bates v. C&S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992)). Plaintiff has not shown such a collection letter – or any letter – sent by Pressler to his address in California prior to the date of the levy. Plaintiff thus makes no showing that Defendants undertook any action toward California, and alleges only that Defendants' actions in receiving a default judgment in New Jersey state court resulted in harm to the Plaintiff, who happens now to be a California resident. This is simply not enough to confer jurisdiction over Defendants.

As the Supreme Court stated in *Walden*, "it is the defendant, *not the plaintiff or third parties*, who must create contacts with the forum State." 134 S. Ct. 1115, 1126 (emphasis added). This Court, engaging in a "forum-focused" analysis, *id.* at 1125, finds that Plaintiff presents no evidence that Defendants' suit-related actions were aimed at California. "[M]ere injury to a forum resident is not a sufficient connection to the forum" for purposes of personal jurisdiction. *Id.* at 1125 (citing *Calder*). Unlike in *Walden*, Plaintiff here has not shown that Defendants even knew that Michael lived in California. Michael was harmed not because Defendants took any action aimed at California, but because California was the state in which he was residing at the time the levy was placed on his account. The Court in *Walden* confronted a similar circumstance, in which plaintiffs were deprived of their money due to the DEA agent's confiscation:

> Not because anything independently occurred in [Nevada], but because Nevada is where respondents chose to be at a time when they desired to use the funds seized by petitioner. Respondents would have experienced this same lack of access in California, Mississippi, or wherever else they might have traveled.

*Id.* Such geographically-attenuated harm was insufficient to confer jurisdiction in *Walden*, where the defendant knew the state in which plaintiffs resided, and is similarly insufficient here, where the Court has been presented with no evidence that the defendant knew where Michael was living

12

at the time of the levy.

Plaintiff further asked the Court, in briefing and oral argument, to determine that the *situs* of Plaintiff's bank account is in California. The Court recognizes that determining where a bank account is "located," for jurisdictional purposes, is a difficult question given the nature and character of national banks, including Chase. A person no longer has access to only one local bank from which he can take out money, but rather he has the convenience of being able to withdraw money and access his account from virtually any location around the world – a convenience Plaintiff himself pleads that he took advantage of, attempting to make a payment from his bank account opened in Chino Hills while he was living in Eritrea. (FAC ¶ 17) The Court, however, declines to answer this question because it is simply unnecessary for its determination – even assuming that Plaintiff's bank account is located in California, Plaintiff pleads only that Chase withdrew money from his account which it paid to the officer of the Bergen County Court (FAC ¶ 23), and does not show through evidence that Defendants had any contact with California prior to the date of the levy.

### 2. *The failure to domesticate the New Jersey judgment*

The second action that Plaintiff claims gives rise to jurisdiction is the failure of Defendants to domesticate the judgment in California, which Plaintiff argues is required under the Sister-State Money Judgments Act. Cal. Code Civ. P. § 1913.

The Ninth Circuit has spoken on the question of whether domestication of a judgment confers jurisdiction: in *Menken v. Emm*, the court held that "the simple domestication of a foreign judgment [], standing alone, is unlikely sufficient to confer personal jurisdiction on the judgment creditor." *Menken*, 503 F.3d 1050, 1061 (9th Cir. 2007). Mere allegations that the Defendants have failed to domesticate a foreign judgment, standing alone, similarly does not permit this Court to exercise personal jurisdiction over non-resident Defendants. Plaintiff argues that the Defendants' conduct was wrongful because "they placed levies on Mr. Michael's bank accounts without first domesticating the judgment." (Opp. to Mot. to Dismiss at 8) Plaintiff has not, however, shown that Defendants knew he was a resident of California prior to the date on which the bank account was levied. Therefore, it would be strange to permit the failure to domesticate,

13

only necessary when Defendants know the state in which Plaintiff lives, to serve as the hook by which Defendants can be subject to jurisdiction if Plaintiff has not met his burden to show that Defendants knew he was located in California. To hold otherwise would run afoul of the Supreme Court's holding in *Walden*, as it would permit this Plaintiff to hale Defendants into this Court based on the actions of Plaintiff and a third party, Chase, rather than the purposeful activity of Defendants. *Walden*, 134 S. Ct. 1115, 1126.

The Court finds that Plaintiff has not proven that Defendants have "expressly aimed" their activities at California sufficient to exercise jurisdiction. The actions of Plaintiff and Chase, a third-party, cannot be imputed onto Defendants when the Plaintiff has not shown that Defendants knew he was residing in California prior to his bank account being levied. Plaintiff has failed to show one of the three necessary elements of the *Calder* test – the express aim element – and as such this Court lacks personal jurisdiction over Defendants. *Cf. Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128-29.

## IV. ORDER

For the foregoing reasons, the Court DISMISSES this case for lack of personal jurisdiction, pursuant to Rule 12(b)(2). The Court grants Plaintiff leave to amend in order to cure the deficiencies outlined above. Without further leave of Court, amendment is limited to curing the deficiencies outlined in this Order. Any amended complaint must be filed with this Court no more than 21 days from the issue of this Order.

**IT IS SO ORDERED.**

Dated: August 20, 2014

BETH LABSON FREEMAN
United States District Judge

14